IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE SIMONS and | : | |
| MARIA SIMONS, h/w | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 12-01493 |
| ARCAN, INC., | : | |
|     Defendant. | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                             **March 27, 2013**

      Plaintiffs, Gene and Maria Simons, husband and wife, filed a Complaint in the Philadelphia Court of Common Pleas alleging negligence, strict liability, breach of warranty, and loss of consortium against Arcan, Inc. ("Arcan" or "Defendant"), a South Carolina corporation that dissolved in 2010. Plaintiffs allege that Mr. Simons was injured when a machine manufactured by Arcan malfunctioned. Arcan filed a motion to remove this case on March 23, 2012. On April 18, 2012, Arcan filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Court permitted jurisdictional discovery. (Doc. No. 6). For the reasons set below, I will deny Defendant's motion.

**I. BACKGROUND**

      At the time of his injury, Mr. Simons was employed as an electrician and maintenance worker for Seal Air-Cryoval, located in Reading, Pennsylvania. (Compl. ¶ 7). On May 3, 2011, Mr. Simons was assigned to work with an Arcan Heavy-Duty Hydraulic Shop Press Model 20-Ton Air/Hydraulic Bottle Jack Press. (Compl. ¶ 19).

1

While Mr. Simons was using the machine it failed and a "work piece" was ejected from it, striking Mr. Simons in the face and causing serious injuries. (Compl. ¶ 19).

The machine was allegedly manufactured by Arcan and either shipped directly or through "stream of commerce" to Seal Air-Cryoval prior to the incident. (Compl. ¶ 11). Arcan was a South Carolina-based corporation which designed, manufactured, and supplied "hydraulic systems and equipment and supplies." (Compl. ¶ 3). Arcan would generally manufacture the presses and supply various other tools, products, and equipment primarily to the automotive industry. (Crowley[1] Dep. 18, June 7, 2012). Arcan was dissolved on July 14, 2010. (Def.'s Mot. Dismiss Ex. C).

Arcan maintained computerized sales records beginning in 2004.[2] (Crowley Dep. 22:20–24:9). These records showed over 300 shipments of Arcan's products into Pennsylvania between 2004 and 2009. (Crowley Dep. 33:19–35:10). However, Arcan did not have a record of a sale or shipment to Seal Air-Cryoval. (Crowley Dep. 88:6–89:7). Arcan had an ongoing sales relationship with Pennsylvania-based retailers, including Pep Boys and the Eastwood Company, in the relevant time period. (Crowley Dep. 44:1–46:7, 68:3–69:23). Arcan also had an engagement with Marc Alan Autoreps, an entity that solicited sales to Pennsylvania-based retailers on Arcan's behalf. (Crowley Dep. 36:11–41:14). Additionally, Arcan had relationships with national retailers, including Costco. (Crowley Dep. 73:20–74:7). When dealing with national retailers, Arcan generally, but not always, shipped its products to distribution centers outside

---

[1] Richard Vick Crowley is a former vice president of Arcan.
[2] There are no sales records predating 2004. (Crowley Dep. 90:2–90:11).

Pennsylvania and the retailers then shipped the products to the stores, including stores in Pennsylvania. (Crowley Dep. 74:8–14). The Arcan brand was subsequently sold to PowerStation, LLC, located in Travelers Rest, South Carolina. (Crowley Dep. 14:14–14:22).

## II.  STANDARD OF REVIEW

When a defendant raises a question of personal jurisdiction through a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff then must present a prima facie case establishing personal jurisdiction. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" Mellon Bank (East )PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat. Bank v. California Fed. Sav & Loan Assoc., 819 F.2d 434 (3d Cir. 1987); cf. Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990) ("A prima facie case [for personal jurisdiction] is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict.")

A plaintiff cannot "rely on the bare pleadings alone in order to withstand" a 12(b)(2) motion. Time Share Vacation Club v. Atlantic Resorts, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Instead, a plaintiff "must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence," such as deposition testimony. Id. Finally, while personal jurisdiction analysis usually must be conducted separately for each plaintiff, the analysis for loss of consortium claims is

3

identical to that for the underlying claim. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 n.3 (3d Cir. 2007).

## III. DISCUSSION

There are two distinct forms of personal jurisdiction: general jurisdiction and specific jurisdiction. The Supreme Court and the Third Circuit have emphasized that general jurisdiction and specific jurisdiction are separate inquiries and not part of a sliding scale. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 321 (3d Cir. 2007). Personal jurisdiction may be established through either general or specific jurisdiction. Id.; Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

A federal court can exercise personal jurisdiction to the extent that "a court of general jurisdiction in the state where the district court is located" could exercise such jurisdiction. FED. R. CIV. P. 4(k)(1)(A). Pennsylvania's long-arm statute authorizes personal jurisdiction over foreign corporations to the extent allowed under the federal constitution. 42 Pa. C.S.A. § 5322(b); Scoggins v. Scoggins, 555 A.2d 1314, 1319 (Pa. Super. Ct. 1989) ("Section 5322(b) authorizes long-arm jurisdiction in any other situations where the minimum requisites of due process are met.") Thus, the question is whether this Court's exercise of personal jurisdiction over Arcan would exceed due process.

### A. General Jurisdiction

General jurisdiction is implicated where the claim arises from the defendant's non-forum related activities. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S.

408, 414 (1984). In such a case, the plaintiff "must show significantly more than mere minimum contacts." Provident National Bank v. California Federal Savings & Loan Association, 819 F.2d 434, 437 (3d Cir. 1987). To assert general jurisdiction, the plaintiff must establish that the defendant's contacts with the forum state were "continuous and substantial." Id.; Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 541 (3d Cir. 1985).

Arcan argues that general jurisdiction is improper because Arcan, as a dissolved corporation, has no present contacts with Pennsylvania. In Gregoire v. Schleicher & Co. Intern., AG, the court held that "[a] nonresident defendant corporation which has had past contacts with a forum state, even if those contacts were substantial, may not be found subject to the general jurisdiction of the forum and thus answerable to claims unrelated to these past contacts unless it presently continues to have substantial contacts with the forum state." Civ. A. No. 90-4720, 1991 WL 168644, at *4 (E.D. Pa. Aug. 22, 1991). As there are no present contacts with Pennsylvania, there is no general jurisdiction over Arcan and I will address the inquiry as to specific jurisdiction.

    B.  Specific Jurisdiction

Specific jurisdiction applies where the plaintiff's cause of action arises from the defendant's forum related activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). The plaintiff must show that the defendant purposefully established "minimum contacts" in the forum state "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Burger King Corp., 471 U.S.

5

at 472; North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. Pa. 1990). The contacts must not be "random, fortuitous or attenuated." Burger King Corp., 471 U.S. at 475, n.18. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." Id. at 475 (quoting McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957). Where the defendant has "manifestly . . . availed himself of the privilege of conducting business [in the forum state] . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King Corp., 471 U.S. at 476.

In other words, for specific jurisdiction to comply with due process, (1) the defendant must have purposefully directed its activities at the forum, (2) the litigation must arise out of or relate to one of those activities, and (3) jurisdiction must comport with fair play and substantial justice. Burger King Corp., 471 U.S. at 472–73, 477. I find that Plaintiff has established that the Defendant had the requisite contacts such that exercising personal jurisdiction comports with due process.[3]

   i.   *Arcan purposefully directed its activities at Pennsylvania*

The Third Circuit applies both Justice O'Connor's and Justice Brennan's tests to determine whether placing a product into the "stream of commerce" of a state is

---

[3] The plaintiffs' warranty claims allegedly arise out of the same contacts with Pennsylvania as the tort claims. Specific jurisdiction for a contract claim is established by the totality of the circumstances. Remick v. Manfredy, 238 F.3d 248, 256 (3d. Cir. 2001). When a product is placed the stream of commerce of a state and the seller purposefully avails itself of a state's market to the extent that there is specific jurisdiction for torts resulting from that product, the claims arising from the contract for sale also fulfill the totality of the circumstances test. Cf. Trueposition, Inc. v. Sunon, Inc., Civil Action No. 05-3023, 2006 WL 1686635, at *7–*9 (E.D. Pa. June 14, 2006).

sufficient to fulfill the "purposeful direction" prong of due process. <u>Pennzoil Products Co. v. Colelli & Associates, Inc.</u>, 149 F.3d 197, 206 (3d Cir. 1998).[4] <u>See also</u> <u>Asahi Metal Industry Co., Ltd., v. Superior Court of California, Solano County</u>, 480 U.S. 102, 112 (1987) (O'Connor, J.) (plurality opinion) (rejecting stream of commerce without further purposeful direction towards the forum, such as advertising or marketing); <u>Id.</u> at 116–117 (Brennan, J., concurring) (arguing that personal jurisdiction is proper "[a]s long as a participant in [the commercial] process is aware that the final product is being marketed in the forum State . . ." and creates economic benefit for the defendant).

    Justice Brennan's test is easily met under these facts. Arcan was aware that its products were being marketed in Pennsylvania since it sold to both Pennsylvania-based and national retailers, shipped products directly into the state, and had a manufacturer's agent whose goal was to increase Pennsylvania sales. In light of these contacts, it was foreseeable that the products would be used in Pennsylvania. Arcan received an economic benefit from these contacts in the form of money from the sales.

    In addition to placing its products in the stream of commerce, it also purposefully directed its products towards Pennsylvania, which is the touchstone of Justice

---

[4] Arcan argues that personal jurisdiction is improper because the press that allegedly caused Mr. Simons' injury could have been bought used rather than new. If Mr. Simons' injury was caused by another person's act or omission rather than Arcan's, that goes to the merits of the case, not this Court's power to hear a claim against Arcan. Since Arcan placed presses into the stream of commerce in Pennsylvania, it cannot defeat jurisdiction on the grounds that this specific machine may not have been targeted at the Pennsylvania market. <u>Cf.</u> <u>Xia Zhao v. Skinner Engine Co.</u>, Civil Action No. 2:11-CV-07514-WY, 2012 WL 5451817, at *8 (E.D. Pa. Nov. 8, 2012) (quoting <u>Dalmau Rodriguez v. Hughes Aircraft Co.</u>, 781 F.2d 9, 15 (1st Cir. 1986)) ("The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there . . . . "). Regardless, a plaintiff bears the burden of proving the existence of jurisdictional facts only by a preponderance of the evidence. <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 146 (3d. Cir. 1992). Mr. Simons met this burden, and is not required to further prove that his employer did not receive the machine through a resale.

O'Connor's test. Arcan had four contacts with Pennsylvania that demonstrate purposeful direction of its products towards the state.

First, Arcan shipped products to non-resellers in Pennsylvania through a common carrier. By physically mailing products directly into Pennsylvania to non-resellers, Arcan was on notice that the products would be used in Pennsylvania and that users could be injured here. See, generally, ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 499 (5th Cir. 2012) (receiving shipments in state from common carrier constitutes purposeful contact because it allows defendant to avail itself of state's "laws, logistics, transportation, and business facilities"); Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp., No. EDCV 08-1328-VAP (JCx), 2008 WL 4889030, at *7 (C.D. Cal. Nov. 12, 2008) (specific jurisdiction appropriate in recipient's state when defendant ships product by common carrier and knows that recipient will use product in that state).

Second, Arcan entered into contracts for sale of its products with Pennsylvania-based retailers such as Pep Boys and the Eastwood Company. Justice O'Connor's concern with the stream of commerce contemplates a situation such as a manufacturer that sells a product to a distributer who then spreads the product outside the manufacturer's control. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). That is not the factual situation presented here. Arcan chose to sell to Pep Boys and Eastwood with the knowledge that they are based in Pennsylvania; Pep Boys and Eastwood did not unilaterally bring the products into the state.

Third, Arcan sold its products to national retailers such as Costco. Sales to national retailers generally present a close call under Justice O'Connor's test. See, e.g.,

Windsor v. Spinner Industry Co., Ltd., 825 F. Supp. 2d 632, 639-40 (D. Md. 2011). However, Arcan not only sold to Costco, but also sold identical products to Pennsylvania-based retailers, shipped products directly into the state, had a manufacturer's agent promoting sales of the product in Pennsylvania, and may have shipped products to the national retailers' Pennsylvania-based distribution centers, the sales to national retailers were purposefully directed to the Pennsylvania market. See J. McIntyre Machinery, Ltd. v. Nicastro, ___ U.S. ___, 131 S. Ct. 2780, 2790 (2011) (Kennedy, J.) (plurality opinion); id. at 2792 (Breyer, J., concurring).

Finally, Arcan engaged a manufacturer's agent, Marc Alan Autoreps, to increase sales its sales in Pennsylvania. Marc Alan was not an employee, and Arcan's relationship with Mr. Alan would almost certainly not be sufficient to establish personal jurisdiction on its own. However, this along with the other evidence discussed above, is sufficient to show that Arcan was purposefully directing its activities at Pennsylvania.

ii.  *The litigation "arises out of or relates to" Arcan's contact that was purposefully directed at Pennsylvania*

The relatedness prong of specific jurisdiction prevents specific jurisdiction from merging with general jurisdiction. It serves as the limitation on the scope of claims that can be brought against a defendant who does not have "continuous and systematic" contacts with the forum state. See, e.g., Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, (1952). Under Third Circuit precedent, litigation "arises out of or relates to" defendant's contact if (1) the contact is a but for cause of the litigation and (2) the burden of personal jurisdiction on the defendant is justified by the value of the benefit from the

9

contact.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 322–23 (3d Cir. 2007). Construing the supported, jurisdictional facts in Mr. Simons favor for the purpose of this motion, Toys "R" Us, Inc. V. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)), Mr. Simons' injuries arise out of or are related to Arcan's activities, which were purposefully directed towards Pennsylvania.[5]

In D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94 (3d Cir. 2009), the court held that there was no specific jurisdiction over the defendant, a Swiss airplane manufacturer, because the plane did not actually enter Pennsylvania "through a 'stream of commerce' as that term is generally understood—i.e, 'the regular and anticipated flow of products from manufacturer to distribution to retail sale.'"  Id. at 105.  The court held that the documented transactions of the plane in question were insufficient to create specific jurisdiction over the litigation arising because the plane "reached Pennsylvania by a series of fortuitous circumstances" with regard to the anticipatable sales.  Id. at 106.  It said that to hold otherwise would render the "arising from or related to" prong meaningless and merge specific and general jurisdiction.  Id.

However, D'Jamoos is distinguishable from this case because an airplane is highly mobile, while a machine press is not.  Arcan sales were directed toward Pennsylvania and

---

[5] To defeat a 12(b)(2) motion, a plaintiff is only required to establish a prima facie case for personal jurisdiction, not to exclude all possible jurisdictional deficiencies.  The plaintiff in a product liability suit is not required to produce evidence that shows how a product actually did reach him.  Instead, he must produce evidence of a way that the product could have reached him that is related to the defendant's purposefully directed conduct.  If the defendant presents evidence that would disprove relatedness if true, the plaintiff must rebut that evidence in order to meet his burden of proof.  See, e.g., D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94 (3d Cir. 2009).  If the defendant shows at a further point in the litigation that the plaintiff's disputed jurisdictional allegations are not true, the Court can then dismiss for lack of jurisdiction.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

Arcan has not presented any evidence of how the machine reached Mr. Simon's employer. Whereas, the defendant in D'Jamoos did not direct the sale of the plane to Pennsylvania and presented undisputed evidence that the airplane did not reach Pennsylvania through the stream of commerce.

In his Complaint, Mr. Simons alleges that Arcan directly shipped the allegedly defective hydraulic press to Plaintiff's employer. Taken in the light most favorable to Plaintiff, this undoubtedly shows but for causation. However, allegations in the complaint must be supported by affidavits or other evidence when personal jurisdiction is disputed. Time Share Vacation Club v. Atlantic Resorts, 735 F.2d 61, 66 n.9 (3d Cir. 1984). The Crowley deposition provides support for this allegation because it shows that Arcan did ship products directly to Pennsylvania consumers. Arcan did not have any records of shipping directly to Sealed Air-Cryoval, but Crowley admitted that Arcan's sales records only go back to 2004.[6] Thus, this lack of a record does not rebut Mr. Simon's supported allegation. Therefore, the allegations in the Complaint along with the affidavit are sufficient to state a prima facie case for jurisdiction.

The Complaint alternatively alleges that Arcan placed the press in the stream of commerce. If Sealed Air-Cryoval obtained the machine from Pep Boys, Eastwood,

---

[6] In its reply brief, Arcan argues that "[t]he most likely explanation" for how the shop press reached Sealed Air-Cryoval is that "it was purchased outside the state and the [sic] shipped into Pennsylvania, or possibly was purchased used." (Doc. No. 14). Arcan premised this argument on Mr. Crowley's deposition testimony. In response to the question "[b]ased on your knowledge of the Arcan, Inc. business, what are the likely ways in which that product could have ended up at Sealed Air in Reading," Crowley responded that "[i]t could have been sold, say, purchased through sale at a Costco retail store. It could have been sold used to them. Those are a couple ways." (Crowley Dep. 107:7–14). This deposition testimony is inadmissible because it is speculative and lacks a foundation, FED. R. EVID. 602; see also Trabbold v. Mike's Hard Lemonade, Civil Action No. 09-4235, 2011 WL 2117605, at *3 n.4 (E.D. Pa. May 26, 2011), and thus cannot be used to disprove Mr. Simon's prima facie case. Time Share Vacation Club v. Atlantic Resorts, 735 F.2d 61, 66 n.9 (3d Cir. 1984); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (holding that on a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.").

Costco, or another national retailer, but-for causation would be satisfied since Arcan purposefully directed its activities at creating a market in Pennsylvania by selling to retailers with extensive operations in the Commonwealth in contrast to the "fortuitous circumstances" in D'Jamoos.  The Crowley deposition provides ample support for the fact that Arcan sold its products to these and other retailers.  Arcan did not present any evidence that if true would disprove an inference that Plaintiff obtained the press from one of these sources.[7]

The second element of the relatedness prong is intended to ensure that "the notion of a tacit *quid pro quo* that makes litigation in the forum reasonably foreseeable" is present.  O'Connor, 496 F.3d 312, 322 (3d Cir. 2007).  In this case, Arcan received profits from the sales of its products to Pennsylvania retailers and consumers.[8]  The benefit of these profits is proportional to the burden of specific jurisdiction for injuries caused by the same products.  See Rivera v. Bally's Park Place, Inc., 798 F. Supp. 2d 611, 617 n.5 (E.D. Pa. 2011) (stating that "the connection between a plaintiff's claims and a defendant's contacts must therefore "be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable" to the defendant.").

---

[7] Allowing Arcan's unsupported statement that Sealed Air-Cryoval may have obtained the machine through resale to defeat jurisdiction would require products liability plaintiffs to prove the chain of title for the product.  This would place a tremendous burden on a plaintiff and the courts.  Cf. Sky Technologies LLC v. SAP AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009) (demonstrating high stakes of imposing jurisdictional chain of title requirements).  Additionally, this requirement might encourage defendants to use jurisdictional discovery to discourage litigation by increasing a plaintiff's costs or encourage manufacturers to make specific products more difficult to identify.  Cf. Convergence Tech. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626 (E.D. Va. 2010) ("What is certain . . . is that jurisdictional discovery is expensive and time consuming."); Hamilton v. Accu-Tek, 32 F. Supp. 2d 47, 50–52 (E.D.N.Y. 1998) (examining jurisdictional difficulties posed by fungible products).

[8] Even if the press were resold, Arcan profited from that in the form of a higher initial sales price.  See supra note 5.

12

Arcan argues that it is not subject to this Court's personal jurisdiction because it ceased doing business with Pep Boys in 2004 and with East Hill Group in 2008. While this lack of present contacts is highly relevant to general jurisdiction, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 340 (3d Cir. 2009); Gregoire v. Schleicher & Co. Intern., AG, Civ. A. No. 90-4720, 1991 WL 168644, at *4 (E.D. Pa. Aug. 22, 1991), it has no bearing on specific jurisdiction when the cause of action before this Court arises from or is related to those past contacts. See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 321 (3d Cir. 2007) ("When courts confine general and specific jurisdiction to their separate spheres, potential defendants can anticipate and control their jurisdictional exposure. As long as out-of-state residents refrain from continuous and substantial forum contacts, they can conduct their affairs confident that transactions in one context will not come back to haunt them unexpectedly in another.") (citations omitted) (quotations omitted); GCIU-Employer Retirement Fund v. Goldfarb Corp., 565 F.3d 1018, 1024 (7th Cir. 2009) (in the context of specific jurisdiction, "past contacts should either bear on the substantive legal dispute or relate to the operative facts of the case"). This goes to the core difference between general and specific jurisdiction: general jurisdiction is based on continuous and systematic contacts with a forum state that may be unrelated to the claim, while even a single related contact with a forum state can create specific jurisdiction. See, e.g., McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957).

### iii. *Asserting personal jurisdiction over Arcan comports with traditional notions of fair play and substantial justice*

Even if the first two jurisdictional prongs are met, jurisdiction would still be improper if it would be unfair or interfere with justice. Burger King Corp v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). In order to show that jurisdiction would be improper, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477; see also Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197, 207 (3d Cir. 1998) (noting that cases where the first two prongs are met but jurisdiction is improper are rare).[9] Relevant factors include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477. (quotations omitted) (quoting World-Wide Volkwagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

In this case, exercising jurisdiction over Arcan will not offend traditional notions of fair play and substantial justice. There will not be a substantial burden on Arcan to defend in Pennsylvania because Arcan will not have to bring in many witnesses from distant locations and the machine press that allegedly caused Mr. Simon's injury is in

---

[9] Arcan has not presented any evidence or argued that the exercise of personal jurisdiction would offend traditional notions of fair play or substantial justice. Nevertheless, I will independently scrutinize this prong since the traditional notions of fair play and substantial justice are fundamental to due process.

Pennsylvania.  See Asahi, 480 U.S. 102, 114 (1987); cf. Netgear, Inc. v. Ruckus Wireless, Inc., Civ. No. 10-999-SLR, 2011 WL 3236043, at *4 (D. Del. July 28, 2011) (noting that technological advances and the extensive use of depositions have reduced the burden of litigating in a distant forum).  Pennsylvania has a strong interest in ensuring the safety of products that a foreign corporation is sending into the state, particularly when a product allegedly injures one of its citizens.  Willyoung v. Colo. Custom Hardware, Inc., Civil Action No. 1:08-cv-17-SJM, 2009 WL 3183061, at *14 (W.D. Pa. 2009); see also McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 325 (3d Cir 2007); cf Asahi, 480 U.S. at 114 (state's interest in products liability increased when plaintiff is a resident).  Finally, South Carolina, which would have personal jurisdiction over Arcan as its state of incorporation,[10] has a lessened interest in this case since South Carolina courts would apply Pennsylvania's substantive law as Pennsylvania is where the alleged injury occurred.  Asahi, 480 U.S. at 115; Boone v. Boone, 546 S.E.2d 191, 193 (S.C. 2001) (lex loci delicti as South Carolina's choice of law for products liability).

*iv. Arcan's dissolution does not affect personal jurisdiction since it still has capacity to be sued*

Finally, Arcan argues that it offends due process for this Court to exercise personal jurisdiction over it since it is a dissolved corporation. I disagree.  Arcan had the capacity to be sued for its alleged tortious behavior.  Federal Rule of Civil Procedure 17(b)(2)

---

[10] J. McIntye Machinery, Ltd. v. Nicostra, ___ U.S. ___, 131 S.Ct. 2780, 2787 (2011) (Kennedy, J.) (plurality opinion).

15

notes that the capacity of a corporation to sue or to be sued is determined by the laws under which it was organized. Goodman v. Goodman, 2010 U.S. Dist. LEXIS 20518 (D.N.J. Mar. 5, 2010); Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 260 (1927) ("Corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. . . . It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being."). South Carolina dissolution does not affect a dissolved corporation's capacity to litigate. S.C. Code § 33-14-105(c)(5)–(6); PCS Nitrogen, Inc. v. Ross Development Corp., Civil Action No. 2:09-3171-MBS, 2011 WL 3665335, at *3–4 (D.S.C. Aug. 19, 2011); see also S.C. Code § 33-14-105, South Carolina Reporters' Comment ("[D]issolution does not prevent commencement of a proceeding against a corporation in its corporate name.").

Additionally, in a thoughtful and thorough opinion addressing nearly identical circumstances to the instant case, a Texas appellate court held that the exercising personal jurisdiction over a dissolved foreign corporation did not offend due process since the corporation's state of incorporation still allowed claims against it. Pulmosan Safety Equipment Corp. v. Lamb, 273 S.W.3d 829, 841–43 (Tex. App. 2008). Although not binding on this Court, I find Pulmosan persuasive. If Arcan could still be sued in South Carolina, this Court's exercise of personal jurisdiction does not offend fair play and substantial justice. Therefore, Arcan can still be sued and specific personal jurisdiction is proper.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Arcan's motion to dismiss for lack of personal jurisdiction is denied.

An appropriate Order follows.